UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>DANIELE GIUSEPPE GIANNONE, and HEIDI AULL, Special Personal Representative for the Estate of KIMBERLY ANN MOLLICONE<br><br>        Defendants. | Case No. 22-13075<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [18]**

Kimberly Ann Mollicone was tragically killed during a shootout between her husband Matthew Mollicone and Daniele Giuseppe Giannone. (ECF No. 1, PageID.4.) Kimberly's Estate has sued Matthew and Daniele in Michigan state court for negligence and assault and battery. (*See generally* ECF No. 1-3 (*Mollicone* complaint).) In that case, the Estate alleges that Matthew drove to Daniele's house on July 12, 2022, with Kimberly in the car, so Matthew could confront Daniele about a suspected extramarital affair between him and Kimberly. (*Id.* at PageID.73.) Upon arrival, Matthew allegedly began shooting at Daniele, who returned fire and then retreated inside his house to retrieve another firearm or ammunition. (*Id.*) Daniele came back outside and resumed exchanging gunfire with Matthew as the Mollicones were pulling out of the driveway. (*Id.*) At some point during the secondary exchange,

Kimberly was shot in the neck and died from her injuries. (*Id.*) The state court case is ongoing.

At the time of the shooting, Daniele's home was insured by State Farm Fire and Casualty Company. (ECF No. 1-2 (policy).) So Daniele asked State Farm to defend and indemnify him in the state case. (*See* ECF No. 1, PageID.5.) But State Farm believes that Daniele's intentional conduct caused Kimberly's injuries and thus, her injuries did not arise from an "accident," *i.e.*, a covered "occurrence" under the insurance policy. (*Id.* at PageID.5.) So State Farm filed this declaratory judgment action asking the Court to declare that State Farm has no duty to defend or indemnify Daniele in the state case. (*See generally* ECF No. 1.)

State Farm has now moved for summary judgment. (ECF No. 18.) The motion is fully briefed. (*See* ECF Nos. 27 (Estate's response), 31 (State Farm's reply).)[1] Given the clear briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

Because the Court concludes that the policy unambiguously precludes coverage in the state case, it will grant State Farm the relief it seeks.

### I.

Start with the facts.

---

[1] While Daniele also attempted to file a response, it was stricken for failure to comply with the Court's case management requirements (*see* ECF No. 5), and Daniele never refiled a compliant brief. The deadline to refile was August 16, 2023, which has long since passed. (*See* Text-Only Order, August 15, 2023). So the Court will proceed without considering Daniele's stricken response.

2

On September 9, 2022, Kimberly's Estate filed a lawsuit against Daniele (and Matthew) in Macomb County Circuit Court seeking damages against Daniele for negligence and assault and battery causing Kimberly's death. (*See* ECF No. 1-3.) The Estate asserts that Matthew believed Kimberly and Daniele were having an affair. (ECF No. 1-3, PageID.73.) So on July 12, 2022, Matthew drove Kimberly to Daniele's home, apparently so Matthew could confront Daniele about the alleged affair. (*Id.*) Daniele was barbecuing in his garage when the Mollicones pulled into his driveway. (*Id.*)

According to Daniele's testimony, Matthew exited his vehicle, "aggressive[ly]" confronted Daniele, and told him to stay away from Kimberly while "brandishing his firearm." (ECF No. 18-4, PageID.333, 335.) Daniele, who was also armed, said Matthew charged at him, so he fired a "warning shot" to get him off his property. (*Id.* at PageID.337.) He explained that after the warning shot, Kimberly attempted to pull Matthew away, at which point Matthew pulled out his gun and began shooting at Daniele. (*Id.* at PageID.338.) Daniele testified that he was shot twice in the leg, returned fire, and eventually ran out of bullets, so he ran back inside his house and retrieved another firearm. (*Id.* at PageID.339–342.)

Daniele says he then returned outside with the intent to get the Mollicones off his property, as they were still in his driveway and his family was also outside. (*Id.* at PageID.342.) He acknowledged that the Mollicones were in their vehicle and backing out of his driveway upon his return outside, but said he saw a firearm appear from the vehicle's passenger side window—where Matthew was seated. (*Id.* at

3

PageID.343–344.) He testified that Matthew began shooting again, so he took cover and then returned fire toward Matthew and the vehicle. (*Id.* at PageID.344–345.) Eventually "[he] realized that one of [his] shots [took] effect" when the vehicle stopped at the end of the driveway and Matthew got out of the passenger seat. (*Id.*) Kimberly, who was driving the vehicle, was fatally struck in the neck by a bullet from Daniel's gun. (*Id.*; ECF No. 27-1, PageID.643.) Daniele testified that he "never intended to shoot [Kimberly]" and that he did not "expect that she would get hurt or even shot." (ECF No. 27-1, PageID.643.)

Matthew was criminally charged with felony murder, among other charges, for the death of Kimberly and his actions at Daniele's residence. (*See* ECF No. 27, PageID.623–624 (citing *People v. Mollicone*, No. 2023-000473 FC, (Mich. Cir. Ct. filed Feb. 17, 2023)).) Those charges remain pending. (*Id.*) To date, Daniele has not been criminally charged for this incident. (*See* ECF No. 27-1, PageID.643.)

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It does not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

The parties agree that Michigan law governs the interpretation of the insurance policy at issue in this case. (*See* ECF No. 18, PageID.240; ECF No. 27, PageID.630.) But they dispute whether the policy requires State Farm to defend and indemnify Daniele in the state case.

Under Michigan law, "[t]he [duty to defend] requires insurers to pay for the insured's legal counsel and litigation costs when the policy arguably covers the alleged liability; the [duty to indemnify] requires them to pay the injured party any damages awarded against the insured for the covered loss." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1021 (6th Cir. 2022) (citing *Farmers & Merchants Mut. Fire Ins. Co. v. Lemire*, 434 N.W.2d 253, 255 (Mich. Ct. App. 1988)). "The duty to indemnify arises only with respect to insurance afforded by the policy, whereas the duty to defend arises if a third party's allegations against the insured arguably come within policy coverage." *City of Warren v. Int'l Ins. Co. of Hannover*, 524 F. App'x 254, 258 (6th Cir. 2013) (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996)). If, based on the underlying complaint, "the policy does not apply, there is no duty to defend." *Am. Bumper*, 550 N.W.2d at 481. And if there is no duty to defend, there is no duty to indemnify. *See id.*; *see also Cone v. Northfield Ins. Co.*, No. 13-15096, 2015 WL 668118, at *6 (E.D. Mich. Feb. 17, 2015) ("[C]ourts applying Michigan law have found that if a duty to defend does not exist, a duty to indemnify will not arise either.").

5

Within this framework, Michigan courts treat an insurance policy like any other contract. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012). "The relevant contract interpretation principles are simple enough—courts should enforce contract language in accordance with its plain and commonly used meaning, being careful to enforce specific and well-recognized terms." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193–94 (Mich. 1999); *see also Stryker*, 735 F.3d at 354. If a term is defined by the policy, then the policy's definition controls as long as it is unambiguous. *Henderson*, 596 N.W.2d at 193. And while insurance contracts are construed in favor of the insured if ambiguity is found, "this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured." *Id.* at 194. The proper interpretation of a contract is a question of law, as is the question of whether contract language is ambiguous. *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003).

Daniele's policy states that State Farm will provide a legal defense and pay any damages award up to the policy limit "if a claim is made or a suit is brought against [Daniele] for damages because of bodily injury or property damage to which this coverage applies, *caused by an occurrence*." (ECF No. 18-2, PageID.293 (emphasis added)). In short, this provision means that State Farm is obligated to provide coverage and defend against the Estate's lawsuit only if an "occurrence" took place. *See Meemic Ins. Co. v. Ritchie*, No. 358929, 2022 WL 12102845, at *2 (Mich. Ct. App.

6

Oct. 20, 2022) (interpreting similar policy provision (citing *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999))).

The policy defines occurrence as "an *accident*, including accidental exposure to conditions, which first results in a. bodily injury; or b. property damage; during the policy period." (ECF No. 18-2, PageID.309 (emphasis added).) The policy does not define the term "accident," so "the commonly used meaning controls." *Masters*, 595 N.W.2d at 838 (internal quotation marks omitted).

In interpreting similar policy provisions, Michigan courts have adopted the common meaning of "accident" as "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Id.*; *see also Auto Club Grp. Ins. Co. v. Burchell*, 642 N.W.2d 406, 412–13 (Mich. Ct. App. 2001). The Michigan Supreme Court has further explained that "the definition of accident should be framed from the standpoint of the insured, not the injured party." *Masters*, 595 N.W.2d at 838. Importantly, "the appropriate focus of the term 'accident' must be on both the injury-causing act or event and its relation to the resulting property damage or personal injury." *Id.* (internal quotation marks and emphasis omitted). The *Masters* decision instructed courts to consider the following when deciding whether an act constitutes an accident:

> Of course, an insured need not act unintentionally in order for the act to constitute an "accident" and therefore an "occurrence."
>
> However, where an insured does act intentionally, a problem arises in attempting to distinguish between intentional acts that can be classified as accidents and those that cannot. In such cases, a determination must

7

> be made whether the consequences of the insured's intentional act either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions. When an insured acts intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, . . . when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for any resulting damage or injury, despite the lack of an actual intent to damage or injure.

*Id.* at 838–39 (omission in original) (internal quotation marks and citations omitted). In other words:

> What this essentially boils down to is that, if both the act and the consequences were intended by the insured, the act does not constitute an accident. On the other hand, if the act was intended by the insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured.

*Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20, 23 (Mich. 2002).

### A.

At the outset, the Court notes that the parties agree that the event or act that caused Kimberly's injury was intentional—that is, Daniele intentionally and knowingly pulled the trigger of his firearm while aiming at the Mollicone's vehicle and struck Kimberly. (ECF No. 27, PageID.626 ("Kimberly Mollicone was accidentally shot in the neck by [Daniele] while he was defending himself and trying to shoot at [Matthew].").) State Farm argues the inquiry should end there. It says that the occurrence that caused Kimberly's death, and forms the basis of the underlying lawsuit, was Daniele's intentional act of discharging his weapon at the Mollicones' vehicle, which was not accidental and thus is not covered under the policy. (ECF No. 18, PageID.245.)

Kimberly's Estate disagrees. It argues that the consequences of Daniele's intentional act were *unintended*—that Daniele intended to discharge his weapon but was only returning fire at Matthew and did not intend to strike Kimberly. (ECF No. 27, PageID.625.) Put another way, the Estate emphasizes that Daniele did not intend to shoot or kill Kimberly, nor did he have a reasonable expectation that Kimberly would be shot when he fired at the Mollicones' vehicle. (*Id.*) Instead, the Estate argues that this is a "simple negligence case whereby [Daniele] was negligent in shooting at Matthew Mollicone and accidentally hit Kimberly Mollicone." (*Id.*)

State Farm's position is the one that comports with Michigan law. As explained above, since Daniele says he did not intend to shoot and kill Kimberly, the question here is whether Daniele reasonably should have expected the consequences of his acts because of the direct risk of harm created by intentionally firing at a vehicle Kimberly occupied. *Masters*, 595 N.W.2d at 839

To avoid what appears to be an obvious answer, the Estate says that this case is like *Allstate Insurance Company v. McCarn*, 645 N.W.2d 20 (Mich. 2002). In *McCarn*, the insured's grandson took his grandfather's gun from under the bed, pointed the gun at his friend, and, believing it was unloaded, pulled the trigger, killing his friend. *Id*. at 24. The Michigan Supreme Court found that the shooting was accidental and thus was a covered "occurrence" under a similar insurance policy. *Id*. The Court reasoned that the insured's grandson "believed the gun was not loaded" and "had no intention of firing a loaded weapon," so "[n]o bodily injury would have been caused by [his] intended act of pulling the trigger of an unloaded gun." *Id*.

9

But that case is distinguishable. Daniele knew his gun was loaded, he knew Kimberly was in the car with Matthew, and he intentionally fired numerous shots at the Mollicone's occupied vehicle. In fact, he took time to ensure he had a loaded gun when he retreated into his house after the first exchange of fire. And it was only after firing multiple shots at the vehicle that Daniele realized "that one of [his] shots [took] effect" and struck Kimberly. (ECF No. 18-4, PageID.344–345.) Applying *Masters*, this case involves intentional conduct resulting in an intentional or, at the very least, reasonably expected consequence—firing bullets at a moving vehicle to injure one of the occupants and injuring the other. That Daniele intended to shoot Matthew and not Kimberly who was sitting directly beside Matthew does not make this an accident.

Indeed, this case is more like *Nabozny v. Burkhardt*, 606 N.W.2d 639, 640 (Mich. 2000). There, the insured tripped the plaintiff while the two were fighting, breaking the plaintiff's ankle. *Id*. Although the insured undisputedly did not intend to break the plaintiff's ankle, the Michigan Supreme Court ruled that the insured's act was not "accidental" as defined in the policy because he should have reasonably expected that the plaintiff could suffer a broken ankle from being tripped. *Id.* at 644; *see also Ritchie*, 2022 WL 12102845, at *3 ("Unlike in *McCarn I* where a playing child thought a gun was not loaded when he pulled the trigger, Ritchie's alleged act of pointing his gun at Weathersby intentionally created a direct risk of mortal fear and emotional injury. Therefore, Ritchie reasonably should have expected the consequences of his act because of the risk of harm he created." (internal quotation marks omitted)).

10

So too here. Even if Daniele did not intend to strike and kill Kimberly, he admittedly intended to discharge his weapon at the Mollicones' vehicle. And he reasonably should have expected the outcome given the risk of harm he created by this conduct.

Resisting this conclusion, the Estate argues that this case is distinguishable from *Nabonzy* because Kimberly was an innocent third party and not Daniele's intended target. (*See* ECF No. 27, PageID.634.) But again, the *Masters* Court made clear that "when an insured act[s] intending to cause . . . personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended." *Masters*, 595 N.W.2d at 838. So even if Daniele intended to strike Matthew, albeit in self-defense, as the Estate argues, coverage would still be denied under the policy.

## IV.

In sum, State Farm only has a duty to defend and indemnify Daniele in legal actions for personal injury arising out of an "occurrence," which is defined under the policy as an "accident." The plain and common meaning of the term "accident" does not include intentional conduct resulting in consequences that reasonably should have been expected by the insured given the direct risk of harm created by his actions. Thus, Kimberly's fatal shooting, which was reasonably expected to follow from Daniele's firing at the car she occupied, was not an accident. Accordingly, State Farm has no duty to defend—and thus no duty to indemnify—Daniele in the state case.

11

For these reasons, State Farm's motion for summary judgment (ECF No. 18) is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: February 26, 2024

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE